IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL MARTINEZ,

      Plaintiff,

v.                                                                                          Civ. No. 19-980 SCY

ANDREW SAUL, Commissioner of Social
Security,

      Defendant.

# MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record, Doc. 12, filed December 20, 2019, in support of Plaintiff Michael Martinez's Complaint, Doc. 1, seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, denying his claim for disability insurance benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434. On February 24, 2019, Mr. Martinez filed his Motion To Reverse And Remand For A Rehearing With Supporting Memorandum. Doc. 15. The Commissioner filed a response on May 26, Doc. 19, and Mr. Martinez filed a reply on June 19, Doc. 20. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 8.

**APPLICABLE LAW**

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

> (1)    At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.
>
> (2)    At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, he is not disabled.
>
> (3)    At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4)    If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[2] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

>   most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

   B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

3

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

**BACKGROUND AND PROCEDURAL RECORD**

Claimant Michael Martinez suffers from the following severe impairments: benign brain tumors, loss of visual efficiency, dysfunction of major joints, osteoarthritis, other disorders of the gastrointestinal system, anxiety disorders, affective disorders, and organic mental disorders. Administrative Record ("AR") at 28. Mr. Martinez completed two years of college and has past relevant work as a radiologic technologist. AR 93, 338.

On December 8, 2015, Mr. Martinez filed Title II and Title XVI applications for benefits, alleging disability beginning November 22, 2010. AR 26, 168-69. His applications were initially denied on April 6, 2016, and upon reconsideration on September 1, 2016. AR 208-09. Mr. Martinez requested a hearing on November 9, 2016. AR 236-37. Administrative Law Judge ("ALJ") Michael Leppala conducted a hearing in Albuquerque on April 12, 2018. AR 43. Mr. Martinez appeared with legal representation and testified. *Id.* The ALJ also took testimony from Vocational Expert ("VE") Cindy Harris. AR 43, 399-400. On October 18, 2018, the ALJ issued an unfavorable decision. AR 26-38.

At step one of the sequential evaluation process, the ALJ found that Mr. Martinez had not engaged in substantial gainful activity since his alleged onset date of November 22, 2010. AR 28. At step two, the ALJ found that Mr. Martinez had the following severe impairments: benign brain tumors, loss of visual efficiency, dysfunction of major joints, osteoarthritis, other disorders of the gastrointestinal system, anxiety disorders, affective disorders, and organic mental disorders. *Id*. Notably, the ALJ did not discuss or consider whether Mr. Martinez had any severe impairments related to chronic headaches. *Cf.* AR 28-29. At step three, the ALJ found that Mr. Martinez did not have an impairment or combination of impairments that meets or medically equals the severity of a listing. AR 29-32.

At step four, the ALJ found Mr. Martinez cannot perform his past relevant work. AR 36. The ALJ assigned Mr. Martinez an RFC for light work with some restrictions and found that he can handle "simple and moderately detailed inclusions" and work-related decisions. AR 32. There was no inclusion for absenteeism from work during a typical month. *Cf. id.* In making this finding, the ALJ evaluated the following opinion evidence:

- GAF scores of 40-65 given by Mr. Martinez's practitioners (AR 34);

- Gerald Russel, Ph.D., in 2012 diagnosing Mr. Martinez with Cognitive Disorder, NOS, and Bipolar Disorder, opining that Mr. Martinez appeared to retain enough ability to re-enter the workforce and/or school, but may require accommodations (AR 34-35);

- Seema Sahu, PA-C, a non-acceptable medical source, opining in 2011 that Mr. Martinez could return to full-time work with no restrictions and with the ability to lift 50 pounds and walk without difficulty (AR 35);

- Dr. Young-Rodriguez opining in 2012 that Mr. Martinez had moderate to severe limitation of activity involving his left knee (AR 35);

- Michael Miller, Mental Health Therapist and non-acceptable medical source, opining in 2018 that Mr. Martinez is unable to mentally meet competitive standards or mentally function, which effectively renders Mr. Martinez mentally disabled (AR 35);

- The state agency medical consultants opining that Mr. Martinez is able to perform light exertion work with occasional to frequent postural activity (AR 35); and

- The state agency psychological consultants opining that Mr. Martinez has no limitation in understanding and memory, and moderate limitations in the remaining paragraph B criteria (AR 35-36).

At step five, the ALJ found that Mr. Martinez is able to perform the jobs of Marker and Motel Housekeeper, with approximately 438,000 jobs in the national economy. AR 36-38. The ALJ therefore concluded that Mr. Martinez is not disabled under the standards of the Act. AR 38.

On August 21, 2019, the Appeals Council refused to exhibit additional evidence submitted by Mr. Martinez, and denied review. AR 1-4. On October 18, 2019, Mr. Martinez filed

a timely appeal with this Court. Doc. 1. The ALJ's decision is the final decision of the Commissioner for purposes of judicial review.

## ANALYSIS

Mr. Martinez argues that the Court should remand because: (1) the Appeals Council should have considered the new evidence submitted to it; and (2) ALJ Leppala failed to properly weigh the opinions of consultative examiners Gerald Russell, PhD, and Raul Young-Rodriguez, MD. Doc. 15 at 2. Because the Court concurs that the Appeals Council should have considered the new evidence, the Court does not reach the second issue Mr. Martinez raises on appeal.

A.      The Standard Of Review Is De Novo.

Under its regulations, the Appeals Council will only review a case if, among other things, it receives additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[3] Whether evidence qualifies for consideration by the Appeals Council under this standard is a question of law subject to de novo review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). If the evidence does qualify and the Appeals Council

---

[3] These regulations were recently amended. *See* Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987, 2016 WL 7242991 (Dec. 16, 2016) (effective January 17, 2017, with compliance required after May 1, 2017). The amendments added that the Appeals Council will only consider additional evidence if the claimant shows good cause for not informing the ALJ about the new evidence and submitting it to him or her. *Id.* §§ 404.970(a)(5), 416.1470(a)(5). Neither the Appeals Council nor the Commissioner, however, contend that Mr. Martinez was required to demonstrate "good cause" for not submitting the evidence earlier. Therefore, the Court does not consider whether Mr. Martinez met this standard.

erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new evidence. *Id.* "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* The Court will refer to this as the "de novo" standard of review.

The standard of review in district court changes significantly, however, if the Appeals Council *did* consider the new evidence, but nonetheless determined that substantial evidence supported the ALJ's decision. In such a case, without consideration of the subsection (a)(5) requirements for qualification, the Court would then perform its *own* substantial-evidence review of the entire record, taking into account the new evidence never presented to the ALJ that the Appeals Council considered but did not necessarily discuss. *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013); *Krauser*, 638 F.3d at 1328; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017). The Court will refer to this as the "substantial-evidence review" standard.

The Commissioner's brief conflates these two standards of review. Although the Commissioner structures its argument by analyzing whether the information submitted to the Appeals Council is new, material, or chronologically pertinent—the proper question under the de novo standard of review—the Commissioner makes frequent reference to and repeatedly relies on *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017), a case applying the substantial-evidence review standard. Doc. 19 at 13-15.

To reiterate: when never-before-considered evidence is presented to the Appeals Council, the substantial-evidence review standard applies *only* if the Appeals Council "considered" the additional evidence as qualifying for review under subsection (a)(5)'s three criteria. This is clear in *Vallejo* itself, which applied substantial-evidence review because the Appeals Council considered the additional evidence. *See* 849 F.3d at 953 ("The Appeals Council denied review, stating that it 'considered' [the doctor]'s opinion, along with other additional evidence, but found

8

that evidence didn't 'provide a basis for changing the ALJ's decision.'" (internal alterations omitted)); *see also id.* at 954 n.1 ("When a claimant submits new evidence to the Appeals Council and the Council accepts that evidence, it becomes part of the administrative record for the district court to consider in performing its substantial-evidence review.").

The prior, published opinion of *Krauser v. Astrue* laid out the distinction between the two standards of review very explicitly:

> [W]e have repeatedly held that whether evidence is new, material and chronologically pertinent is a question of law subject to our *de novo* review. But we have also held that when the Appeals Council *accepts* additional evidence, that is an implicit determination that it is qualifying new evidence, requiring the Appeals Council to consider it and this court to include it in our review of the ALJ's decision, without separate consideration of the requirements for qualification. These two lines of cases do not clash where the Appeals Council *rejects* new evidence as non-qualifying and the claimant challenges that ruling on judicial review—in that event, . . . our general rule of de novo review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence.

638 F.3d at 1328 (internal alterations and citations omitted).

The threshold determination is therefore whether the Appeals Council "accepted" the new evidence or "rejected" it. The Court agrees with Mr. Martinez that, in this case, the Appeals Council rejected the new evidence because it found that the evidence is non-qualifying under subsection (a)(5)'s new/material/temporally relevant standard. AR 2 ("We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.").

When the Appeals Council stated it did not "exhibit" the evidence, it also necessarily conveyed that it did not "consider" the evidence. This is because when the Appeals Council "considers" evidence, it also "exhibits" that evidence, meaning the evidence becomes part of the

9

medical record available for a substantial-evidence review.[4] Here, the converse is true: the Appeals Council did not "exhibit" the evidence because it did not "consider" it.

In determining whether the Appeals Council considered evidence, the proper focus is not on the Appeals Council's choice of semantics but, instead, whether the Appeals Council correctly determined that the never-previously-submitted evidence failed to meet the (a)(5) criteria. As the Tenth Circuit found in an unpublished but persuasive decision, subsection (a)(5) consists of "predicate requirements . . . to warrant consideration" of the additional evidence. *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013). Therefore, "the Appeals Council's dismissal of the additional evidence's import [under a subsection (a)(5) criterion] indicates that it ultimately found the evidence did not qualify for consideration at all." *Id*. "This case therefore boils down to whether the Appeals Council should have considered the additional evidence," under the de novo standard of review. *Id.* Based on this unpublished but influential Tenth Circuit decision, the Court rejects the Commissioner's argument that the Court here should apply the substantial-evidence standard of *Vallejo v. Berryhill*, and instead proceeds to review de novo whether the evidence is new, material, and temporally relevant.

      B.      The Evidence Is New, Temporally Relevant, And Material.

Mr. Martinez argues that the following evidence qualified for consideration as new, temporally relevant, and material:

---

[4] An "exhibit" is "any evidence upon which a finding and decision are based," whether before an ALJ or the Appeals Council. HALLEX, I-4-2-20, https://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-20.html. If the Appeals Council had exhibited the evidence, it would appear in the "Medical Records" section at the end of the Administrative Record. Because the Appeals Council did *not* exhibit it, the records were "included in the administrative record" but placed at the beginning and treated as "procedural documents, similar to the hearing decision or AC denial notice." HALLEX, I-4-2-20. Thus, the additional exhibits are not part of the record of medical evidence before the Court. This further indicates that the only question properly before the Court is whether the additional exhibits *should* be part of the medical-evidence record.

- Progress notes from Ellen Marder, MD, dated from March 8, 2018 to April 5, 2018 (AR 128-34);

- Mental Residual Functional Capacity from Ellen Marder, MD, dated April 5, 2018 (AR 107-11); and

- MRI Results dated April 9, 2018 (AR 104-06).

Doc. 15 at 11.

According to this evidence, on March 8, 2018, Dr. Marder diagnosed Mr. Martinez with "Chronic migraine without aura, not intractable, without status migrainosus"; "Daily headache"; and "Meningioma, not otherwise specified." AR 131. Mr. Martinez reported migraine headaches twice a month that last thirty minutes each. *Id.* He also has chronic daily headaches which are non-severe and do not prevent him from doing any activities. *Id.* He reported an olfactory meningioma which was last imaged in 2016, and Dr. Marder ordered a new MRI. AR 130, 134. On review of systems, Dr. Marder noted mostly normal results but that he was "agitated" and "tearful at times." AR 133. She recommended he continue treatment of symptoms, decrease caffeine intake, and exercise regularly. AR 131.

The progress notes from Dr. Marder on April 5, 2018, reveal that the MRI was still pending. AR 128. She noted that Mr. Martinez's chronic headaches were ameliorated by a reduction of his caffeine intake and that Mr. Martinez declined treatment for his consistent migraines. *Id.* Her physical and mental status examinations revealed normal functioning. AR 129-30.

On April 5, Dr. Marder filled out a mental RCF questionnaire. At that point, she had been seeing Mr. Martinez for one month for headaches and sequela (history) of stroke. AR 107. She described the neurological examination as normal, but found he had severe chronic headaches and an olfactory meningioma. *Id.* As the Commissioner notes, the doctor left much of the form blank. AR 108-10. On the page she did fill out, she noted an "abnormal brain MRI"; that no

11

psychiatric conditions were applicable to her analysis; that Mr. Martinez would be absent from work three days per month; that Mr. Martinez was not a malingerer; and that his impairments were consistent with the assessed symptoms and functional limitations. AR 111.

The MRI report dated April 9 found the meningioma was very similar in size to the previous study of 2015. AR 105. "This tiny meningioma produces minimal mass effect." *Id.* The report found "[m]inimal encephalomalacia in the RIGHT posterior parietal occipital lobes which was not apparent in 2015." *Id.* "There is moderate diffuse volume loss." *Id.* "There is some residual laminar necrosis in this region consistent with previous infarction." *Id.*[5]

*The evidence is new.* Evidence is new "if it is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). There is little question that this evidence is new, and the Commissioner does not argue otherwise. The ALJ had no treating physician opinion before him that found that Mr. Martinez would be absent from work three days a month due to his severe chronic headaches, history of stroke, and an olfactory meningioma. Dr. Marder's opinion is not duplicative or cumulative.

*The evidence is temporally relevant.* Evidence is chronologically pertinent if it relates to the time period adjudicated by the ALJ; *i.e.*, the period on or before the date of the ALJ's decision. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). The Commissioner concedes that Dr. Marder's opinion is temporally relevant. Doc. 19 at 15. As Mr. Martinez points out, Dr. Marder's opinion, her treatment records, and the MRI findings predate the ALJ hearing decision. The Court agrees the new evidence is temporally relevant.

---

[5] Essentially, the death of body tissue from obstruction of the blood supply.

*The evidence is material.* Evidence is material "if there is a reasonable possibility that it would have changed the outcome." *Threet*, 353 F.3d at 1191.[6] The Court finds a reasonable possibility that the additional evidence could have changed the outcome below. Although Dr. Marder's treatment notes are not comprehensive and only document two visits, they establish that she is a treating physician. As discussed above, the ALJ did not have a treating physician opinion before him opining that, due to his conditions, Mr. Martinez would miss work three days a month. And as Mr. Martinez points out, the VE testified that typical tolerances for absenteeism within competitive employment is "about one day a month." AR 93. Therefore, if the ALJ had given Dr. Marder's opinion controlling weight, a reasonable possibility (and probability) exists that the ALJ would have concluded at step five that no work exists that Mr. Martinez can perform in the national economy.

The Commissioner's only argument with respect to materiality involves its improper reliance on *Vallejo*. The Commissioner contends that this Court can find that the ALJ's decision is supported by substantial evidence even in light of the treating physician's opinion, where that opinion is unsupported and inconsistent with other substantial evidence. Doc. 19 at 15. As explained above, however, the Court's current task is not to consider whether, even considering Dr. Marder's opinion, substantial evidence supports the ALJ's decision. *Contra* Doc. 19 at 15 (arguing that "[n]othing in that opinion undermines the ALJ's reasons for giving the greatest weight to the better-explained, better-supported opinions of record that Plaintiff could perform

---

[6] The Tenth Circuit has not revisited its definition of materiality as involving a "reasonable *possibility*" after the 2017 amendments added the phrase "reasonable *probability*" to the relevant regulations. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (emphasis added). Adhering to both the Tenth Circuit's case law and the regulation's new language would require a district court to conclude that the evidence meets *both* standards: that there is a reasonable probability *and* a reasonable possibility that the evidence would change the outcome. For the reasons described above, the Court so concludes in this case.

work with appropriately-restrictive mental limitations"). Instead, because the Appeals Council did not consider Dr. Marker's opinion, the Court's current task is simply to decide whether it should have.

In completing this task, the *only* question before this Court is whether there is a reasonable possibility (and probability) that the new evidence would have changed the outcome. *See Threet*, 353 F.3d at 1191. With respect to this question, the Court finds that, had the ALJ considered this additional medical evidence and had that evidence caused the ALJ to incorporate Dr. Marder's opinion about Mr. Martinez's absenteeism into the RFC, a reasonable possibility (and probability) that the outcome of his application for benefits would have changed. *See Threet*, 353 F.3d at 1191 (additional evidence showing that the claimant had further medical treatment undermined the ALJ's conclusion that her disability had ended); *Padilla v. Colvin*, 525 F. App'x 710, 712-13 (10th Cir. 2013) (additional evidence in the form of a psychological report documenting nonexertional limitations could reasonably have changed the outcome if the RFC had taken the limitations into account).

C. The Court Will Remand The Case To The Agency.

Applying the de novo standard, the Court finds that the additional evidence was new, temporally relevant, and material. The Commissioner argues, however, that this does not mean remand is required: "even if the evidence *does* satisfy each of those three criteria, it does not mean that the Court will remand the case for a new decision." Doc. 19 at 13. Contrary to the Commissioner's argument, the Tenth Circuit has repeatedly instructed that remand is the only remedy available if the Court determines that the evidence qualifies for consideration by the Appeals Council as being new, material, and temporally pertinent. *Krauser*, 638 F.3d at 1328 ("[W]here the Appeals Council *rejects* new evidence as non-qualifying and the claimant challenges that ruling on judicial review . . . our general rule of de novo review permits us to

resolve the matter and remand if the Appeals Council erroneously rejected the evidence."); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) ("Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.").

The Court therefore reverses and remands so the agency can consider this additional medical evidence as part of further proceedings.

## CONCLUSION

For the reasons stated above, Mr. Martinez's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 15, is **GRANTED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**